# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **Patricia Dadosky**<br>868 Gold Dust Road<br>Piketon, OH 45661<br><br>*Plaintiff,*<br><br>-vs.-<br><br>**Mid-America Conversion Services, LLC**<br>℅ Corporate Creations Network Inc.<br>101 North Seventh Street<br>Louisville, KY 40202<br><br>℅ Atkins Nuclear Secured, LLC, DE<br>℅ Corporate Creations Network Inc.<br>119 E. Court Street<br>Cincinnati, OH 45202<br><br>and<br><br>**CRC Technologies, Inc.**<br>c/o Charles R. Conner<br>5410 Fallen Timbers Dr.<br>W. Chester, OH 45069<br><br>*Defendants.* | CASE NO.: 2:22-cv-02503<br><br>JUDGE:<br><br>**COMPLAINT FOR RELIGIOUS DISCRIMINATION UNDER 42 U.S.C. § 2000e,** *et seq.*<br><br>**JURY DEMAND ENDORSED HEREON** |

For her Complaint against Defendants, Plaintiff states:

## INTRODUCTION

1. Executive Order 14042 (the "Order"), while not mentioning vaccines, required "parties that contract with the Federal Government to provide adequate COVID-19 safeguards to their workers…"

2. The Order also required that, to the extent permitted by law, all existing and new contracts with the Federal Government, and those of subcontractors, include a clause requiring compliance

1

with the Safer Federal Workforce Task Force (the "Task Force") guidance regarding COVID-19 safeguards.

3. After President Biden issued the Order, the Task Force issued guidance requiring vaccination. Task Force guidance called for federal contractor employees to be fully vaccinated by January 18, 2022, unless legally entitled to an accommodation for medical or religious reasons. The Task Force guidance required contracts between the Federal Government and any contractor or subcontractor to contain a clause requiring compliance with the guidance.

4. Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the ADA by failing to provide employees required medical or religious accommodations and by failing to engage in an interactive process to provide reasonable accommodations.

5. This suit seeks to remedy Defendants' statutory violations and their discrimination against Plaintiff, who requested a religious accommodation from Defendants' mandate that employees receive the COVID-19 vaccine.

6. Rather than complying with its obligations under Title VII, Defendants threatened to terminate Plaintiff if she did not get vaccinated and did terminate Plaintiff for failure to receive the COVID-19 vaccine.

7. Defendants' statutory violations, discrimination, and retaliation left Plaintiff with the choice of taking the COVID-19 vaccine at the expense of her religious beliefs, or losing her job.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5 (f)(3).

9. Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

10. Plaintiff Patricia Dadosky lives in Piketon, Ohio and worked as a Principal Project Controls Specialist for CRC Technologies, Inc., a subcontractor for Mid-America Conversion Services.

11. Defendant Mid-America Conversion Services ("MCS") is a joint venture led by Atkins Nuclear Secured, LLC, with Westinghouse Electric and Fluor Federal Services. The Office of Environmental Management awarded a five-year contract to Mid-America Conversion Services in September 2016 to assume operation and maintenance of conversion plants, maintenance and management of the specially designed storage cylinders and disposition of end products. MCS began operating the facilities under the approximately $320.5 million contract in February 2017. MCS is a Delaware Corporation registered as a foreign entity in Kentucky. Atkins Nuclear Secured, LLC is a Delaware Corporation registered as a foreign entity in Ohio. It has about 600 employees divided between the Portsmouth, Ohio and the Paducah, Kentucky sites.

12. Defendant CRC Technologies, Inc. ("CRC") is an Ohio corporation that offers business development support for Engineering, Procurement, and Construction Companies. CRC is a subcontractor for MCS.

## FACTUAL ALLEGATIONS

13. The Portsmouth Gaseous Diffusion Plant in Pike County, Ohio is operated by the Department of Energy. The Plant produced enriched uranium for nuclear weapons and commercial nuclear reactors. In 1989, an environmental cleanup program began which continues today. In 2011, decontamination and decommissioning of the Plant began. Over two thousand people worked onsite in various capacities. MCS is one of the primary contractors along with its subcontractors including CRC.

14. Plaintiff worked at the Portsmouth Gaseous Diffusion Plant for nearly 28 years.

15. On September 24, 2021, the Task Force released its initial guidance to federal agencies. Safer Federal Workforce Task Force, COVID–19 Workplace Safety: Guidance for Federal Contractors and Subcontractors ("Task Force Guidance").[1]

16. The Task Force Guidance requires federal contractors and subcontractors to mandate "COVID-19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation." *Id*. at 5. "[C]overed contractor employees" are to be "fully vaccinated" by January 18, 2022—meaning said employees must obtain the final dose of their vaccine of choice no later than January 4, 2022, as "[p]eople are considered fully vaccinated for COVID-19 two weeks after they have received the second dose in a two-dose series, or two weeks after they have received a single-dose vaccine." *Id*. at 4.

A. **Defendants' Vaccine Mandates**

17. On or about October 13, 2021, MCS announced all employees must get a COVID-19 vaccine. MCS imposed this requirement on its subcontractors as well, including CRC.

18. When Defendants announced the vaccine mandate, they stated that employees could request accommodations for religious or health reasons consistent with Equal Employment Opportunity Commission ("EEOC") guidance on private employers issuing such mandates. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws§§* K.1 & K.2., EEOC (May 28, 2021).[2]

19. MCS required employees, including employees of CRC, to receive the single dose Johnson & Johnson vaccine, or at least the first dose of the two-part Moderna or Pfizer BioNTech COVID-19 vaccine by November 17, 2021 to be "fully vaccinated" by December 1, 2021.

---

[1] https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20210922.pdf [last accessed 06/15/2022]
[2] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws [last accessed 6/15/2022]

20. MCS's mandate was absolute, against Task Force guidance. No alternative for periodic testing, mask wearing, or social distancing, even for employees who had COVID-19 and have immunity, was offered. For example, on November 2, 2021, Human Resources for MCS stated to an MCS employee that MCS granted no religious exemptions. MCS employees were forced to choose vaccination or termination.

**B. Federal law prohibiting religious discrimination and retaliation**

21. Title VII prohibits Defendants from discriminating against employees based on religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's […] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000eU).

22. In other words, "[a]n employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship." *Weber v. Roadway Express,* 199 F.3d 270, 273 (5th Cir. 2000).

23. Title VII also prohibits Defendants from retaliating against employees for engaging in protected activity. See *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004).

24. Although Defendants permitted employees to apply for a religious or medical disability exemption and reasonable accommodation, upon information and belief similarly situated employees' requests for exemption and reasonable accommodation were treated differently and processed in a discriminatory manner.

25. On November 10, 2021, the Task Force updated its Guidance for Federal Contractors and Subcontractors, to amend its deadline to be fully vaccinated, and extended the deadline to January 22, 2022.

26. Nevertheless, Defendants' deadline for employees to be fully vaccinated remained on November 17, 2021 despite Defendants' failure to process requests for religious and medical exemptions under Defendants' legal obligations.

**C.  Defendants' accommodation request system**

27. Defendants created means for employees to request accommodations to be exempt from Defendants' vaccine mandate.

28. Employees could request accommodations for religious or medical reasons.

29. Though employed by CRC, Plaintiff had to submit her accommodation request through MCS. Upon information and believe MCS primarily operated the accommodation request system and required CRC to abide by MCS's decisions regarding accommodation requests.

30. Defendants required all employees to submit requests for accommodation by October 18, 2021.

**D.  Plaintiffs' accommodation requests and Defendants' responses**

31. Plaintiff submitted her religious accommodation request on October 17, 2021.

32. In her request Plaintiff stated her Christian beliefs prevented her from receiving the COVID-19 vaccine as, among other reasons, its testing and/or preparation utilized aborted fetal cells. Plaintiff included a letter from her church's pastor explaining the position of the church. Plaintiff was open about her Christian faith throughout her employment and was generally known as a follower of the Christian faith at the Portsmouth plant.

33. Plaintiff primarily worked remotely but indicated along with her accommodation request that she would comply with weekly testing, if required, and would follow all safety protocols when she performed site visits including but not limited to masking and distancing.

34. Defendants conducted no follow-up to Plaintiff's request before Plaintiff received an email from MCS stated her accommodation request was denied.

35. Plaintiff was offered an opportunity to appeal the decision and appealed on or about October 26, 2021.

36. On October 28, 2021, Plaintiff received a verbal notice from Vince Vitale, MCS Human Resources Director, that her appeal was denied.

37. On October 29, 2021, Plaintiff received a verbal notice from Michael Connor, CRC Human Resources Manager, that Plaintiff's final date of employment would be November 18, 2021 if she failed to take the vaccine.

38. CRC was directed by MCS procurement to replace Plaintiff with a vaccinated individual.

39. On November 17, 2021, Plaintiff received an email from CRC stating her computer access would be terminated that afternoon. This was, effectively, Plaintiff's termination notice, though Plaintiff received no written notice of either her termination or of the denial of her internal appeal.

40. Plaintiff's computer access was thereafter terminated as well as Plaintiff's employment.

**E.  EEOC filing and Plaintiff's right to sue**

41. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") raising the issues in this Complaint.

42. The EEOC issued Plaintiff a Notice of Right to Sue on March 18, 2022.

### COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious discrimination-failure to accommodate

43. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

44. Plaintiff holds sincere religious beliefs that preclude her from receiving a COVID-19 vaccine.

45. Plaintiff informed Defendants of those beliefs and requested religious accommodations from the vaccine mandate.

46. Though Plaintiff stated her willingness to comply with measures such as masking, distancing, and testing, Defendants failed to engage in an interactive process with Plaintiff regarding her religious accommodation requests and instead only responded with blanket denials.

47. Defendants failed to provide Plaintiff with reasonable accommodations for her religious beliefs.

48. Defendants discriminated against Plaintiff because of her religious beliefs.

49. Defendants' failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

50. By failing to engage in the interactive process or offer any reasonable accommodation, Defendants' discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious discrimination-retaliation

51. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

52. Plaintiff engaged in protected activity when she requested religious accommodations from Defendants' vaccine mandate.

53. Defendants responded almost immediately by denying Plaintiff's request for religious accommodations.

54. Though Defendants allowed Plaintiff to appeal, Defendants denied Plaintiff's appeal within two days of receipt.

55. Defendants responded to Plaintiff's protected activity by giving Plaintiff the false choice between vaccination and effective termination.

56. Plaintiff's religious beliefs and protected activity were the causes of Defendants' adverse employment action. Defendants' disparate treatment of religious accommodation requests and medical requests, of which on information and belief some were granted, confirms Defendants' hostility to requests for religious accommodation. Defendants did not bother engaging in an interactive process with Plaintiff because they never intended to provide accommodations.

57. By retaliating against Plaintiff for engaging in protected activity, Defendants violated Title VII. This violation harmed and continues to harm Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award her:

a. Damages including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

b. Injunctive relief.

c. Reasonable attorneys' fees and costs.

d. Any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,

**MENDENHALL LAW GROUP**

/s/Warner Mendenhall
Warner Mendenhall (0070165)
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com

*Attorney for Plaintiff*

9

## **JURY DEMAND**

A trial by jury is demanded for all issues so triable.

    Respectfully Submitted,

    /s/Warner Mendenhall
    Warner Mendenhall (0070165)