IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PATRICIA DADOSKY, | : |
| Plaintiff, | : Case No. 2:22-cv-02503 |
| v. | : Chief Judge Algenon L. Marbley |
| MID-AMERICA CONVERSION SERVICES LLC and CRC TECHNOLOGIES, INC | : Magistrate Judge Chelsey M. Vascura |
| Defendant. | : |

**OPINION & ORDER**

This matter is in front of this Court on Defendant CRC Technologies, Inc.'s Motion to Dismiss Counts I and II (ECF No. 38) and Defendant Mid-America Conversion Services, LLC's Partial Motion to Dismiss (ECF No. 39). For the reasons set forth below, both motions are **DENIED**.

I. BACKGROUND

Much of the facts leading up to the present litigation are not in dispute. Plaintiff, Patricia Dadosky, was a Principal Project Controls Specialist for CRC Technologies, Inc. ("CRC"), a subcontractor for Mid-America Conversion Services ("MCS"), until the events leading to this lawsuit. (ECF No. 37 at 3–4). Resulting from this hybrid employment situation, Plaintiff was paid for and provided benefits by CRC, but her services were devoted to and her day-to-day was supervised and directed by MCS. (*Id.* at 4).

Plaintiff was in this job when the COVID-19 pandemic struck, in response to which President Biden and a dedicated task force implemented COVID-19 guidance. (*Id.* at 1, 2, 4). This guidance included a vaccination mandate for employees of government contractors or

1

subcontractors. (*Id.* at 4). As the mandate required covered employees to be fully vaccinated by January 18, 2022, MCS announced to all employees, including Plaintiff, that they must be fully vaccinated by December 1, 2021. (*Id.* at 5). In line with the federal mandate, MCS provided an avenue for employees to request medical or religious accommodations to this vaccination requirement. (*Id.* at 5, 7). Accommodations were to be submitted through MCS by October 18, 2021, who then handled the request and appeal process. (*Id.* at 7). MCS required CRC to abide by MCS's decisions coming out of these processes. (*Id.*).

Plaintiff submitted a timely accommodation request based on her Christian beliefs, explaining her hybrid work situation and her willingness to commit to other safety protocols, such as COVID testing. (*Id.*). MCS denied her request via email, which Plaintiff appealed. (*Id.*). A few days after her appeal, MCS's human resources director verbally notified Plaintiff that her appeal was denied. (*Id.* at 8). The next day, MCS's human resources manager informed her of her termination date should she choose not to begin the vaccination process. (*Id.*). As a result, the day before her termination date, CRC confirmed that Plaintiff's computer access and employment would be terminated that afternoon. (*Id.*).

The parties differ about the impact of Plaintiff's bifurcated employment relationship as it relates to her termination. Based on Plaintiff's original complaint (ECF No. 1), MCS moved to dismiss Plaintiff's claims due to her failure to plead allegations supporting a theory that MCS was her "employer" for Title VII purposes (ECF No. 7-1 at 1). Plaintiff attempted to cure this deficiency in her subsequent complaints, wherein she provides more details about her employment structure and alleges she was jointly employed by CRC and MCS such that either had the ability to terminate her. (ECF No. 37 at 4). In its motion to dismiss this amended complaint, CRC argues that "CRC had no role in, and no allegation is made that CRC participated in, any employment

2

related decision regarding Plaintiff's work at [MCS]," and emphasizes that it simply executed MCS's decision to terminate Plaintiff's employment with MCS. (ECF No. 38 at 4).

Regardless, as result of her termination, Plaintiff subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), who issued Plaintiff a Notice of Right to Sue. (ECF No. 37 at 8). Plaintiff then filed her original complaint with this Court. (ECF No. 1). As mentioned, MCS moved to dismiss for failure to "assert *a single allegation* to support a theory that MCS was her 'employer' within the meaning of Title VII," (ECF No. 7-1), in response to which Plaintiff filed an amended complaint (ECF No. 12). CRC then moved to dismiss on multiple grounds (ECF No. 24), but the Magistrate Judge deemed this motion moot upon Plaintiff's filing of a second amended complaint (ECF Nos. 36, 37). Prior to the filing of this second amended complaint, Plaintiff filed a charge with the Ohio Civil Rights Commission ("OCRC") and received a Notice of Right to Sue. (ECF No. 37 at 8). In lieu of an answer to this most recent complaint, both CRC and MCS moved to dismiss. (ECF Nos. 38, 39). As briefing on both motions is complete (ECF Nos. 40, 41, 42, 45), they are ripe for this Court's review.

## II. STANDARD OF REVIEW

Both motions request dismissal of specific claims under Federal Rule of Civil Procedure 12(b)(6) due to Plaintiff's alleged failure to exhaust administrative remedies (ECF No. 38 at 6–7; ECF No. 39 at 4), and CRC alternatively seeks to prevent this Court from exercising subject matter jurisdiction over Count I and Count II of Plaintiff's claim based on an alleged failure to file timely an EEOC charge against it. (ECF No. 39 at 1, 3, 7). The former is appropriate here, as the Sixth Circuit has held that "[i]t is well established that 'filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court[.]'" *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 646 (6th Cir. 1998) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393

3

(1982)). This Court instead views this procedural hurdle as an "administrative condition precedent" which is considered under 12(b)(6), not 12(b)(1). *Mitchell v. Chapman*, 343 F.3d 811, 819–21, n. 10 (6th Cir. 2003).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) operates to evaluate the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (internal quotations omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)).

### III. LAW & ANALYSIS

#### A. Parties' Arguments

CRC argues that while Plaintiff's state law claim is procedurally proper as a result of the OCRC charge, Plaintiff's Title VII claims are inappropriate because it is not a named party in Plaintiff's EEOC charge nor does it share an identity of interest with the party named in the EEOC charge, which lists only MCS. (ECF No. 38). In response, Plaintiff leans heavily on the fact-bound nature of the identity of interest inquiry and claims that, while "[t]he record requires further development," "the Second Amended Complaint suggests an identity of interest between CRC and MCS" such that dismissal is improper. (ECF No. 40 at 4). Plaintiff also argues that CRC's

4

assertions regarding a lack of identity of interest fall outside of Plaintiff's complaint, which is inappropriate at the motion to dismiss stage. (*Id.* at 1–2).

Inversely, MCS takes no issue with the procedural compliance of Plaintiff's Title VII claims against it, but challenges Plaintiff's Ohio state law claim for failure to name MCS in the OCRC charge. (ECF No. 39 at 2). Plaintiff disagrees, arguing that listing the OCRC as the deferral/referral agency on her EEOC charge deems her charge "dual[ly] filed." (ECF No. 41 at 1). Based on this, she asserts MCS was on notice that "she may seek state law remedies" by nature of listing the OCRC in her EEOC filing even if she did not discuss "Ohio law in the narrative section of her EECO charge." (*Id.* at 2).

### B. Analysis

Combined, the Defendants challenge two aspects of Plaintiff's contentions: (1) who the charges are against; and (2) what claims the charges allege. This Court will take these in turn, starting with what charges Plaintiff brought against which Defendant. It is undisputed that Plaintiff has timely filed an OCRC charge against CRC (ECF No. 38-3) and an EEOC charge against MCS (ECF No. 38-1), both alleging religious discrimination. So, the question is whether Plaintiff brought an OCRC charge against MCS and/or an EEOC charge against CRC.

Generally speaking, a plaintiff must name an entity in its timely EEOC charge in order to sue the same for violating Title VII. *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 546 (6th Cir. 2013). In the context the timely filing requirements of Title VII, the Supreme Court has explained that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980). As this circuit elaborated, "[c]ompliance with the named-party rule is part of a plaintiff's obligation to exhaust her administrative remedies with the EEOC before filing suit."

5

*Lockhart*, 531 F. App'x at 547. But a failure to fulfil this exhaustion obligation is an affirmative defense, and this circuit is "reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted," unless "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Id.* (internal quotations omitted) (first citing *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008); then quoting *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554–55 (6th Cir. 2012)).

Ohio is a "deferral state[]" with a "worksharing agreement between the EEOC and the state agency"—the OCRC—in which charges filed in one are automatically referred to the other. *Welker v. Goodyear Tire Co.*, 117 F.3d 1421, at *2 (Table) (6th Cir. 1997); *Kohn v. GTE N., Inc.*, 754 F. Supp. 563, 566 (S.D. Ohio 1990). As such, Plaintiff correctly points out that "[a]s a deferral state, any charges filed with the EEOC are also automatically deemed dual-filed with the OCRC[.]" *Blank v. Nationwide Corp.*, No. 2:19-cv-00018, 2020 WL 5407972, at *9 n.3 (S.D. Ohio Sept. 9, 2020), *aff'd*, No. 20-3969, 2021 WL 3469187 (6th Cir. Aug. 6, 2021) (citing *Flint v. Mercy Health Partners of Sw. Ohio*, 940 F. Supp. 2d 743, 744[1] (S.D. Ohio 2013)). The inverse is also true: "In Ohio, charges of discrimination with the OCRC are 'dual filed,' meaning that OCRC forwards a copy of the charge to the EEOC, which then opens its own file for the charge." *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 518 n.3 (6th Cir. 2021) (citing *Ross v. ITT Cleveland Motion Control*, No. 1:09-cv-2220, 2010 WL 779999, at *3 (N.D. Ohio Mar. 2, 2010)). Indeed, the Sixth Circuit has referred to charges filed with a state law civil rights commission as an "EEOC charge," indicating the interchangeability of these charges once either is filed. *See, e.g.*, *Knafel v. Pepsi-Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1476, 1480. (6th Cir. 1990).

---

[1] *Blank* cites page 744 of *Flint*, but the proposition is on page 752.

6

Because of this relationship between Ohio and the EEOC, by filing either an OCRC or EEOC charge against each of the Defendants, Plaintiff has timely filed both an OCRC and EEOC charge against both CRC and MCS. As a result, both CRC and MCS are named parties in both charges, and this Court need not evaluate the identity of interest exception to the named-party rule. *See Knafel*, 899 F.2d at 1481 (explaining and applying the identity of interest tests).

Instead, this Court turns to the second element at issue laid out above: the substance of the charges. Both charges seek redress for Plaintiff's alleged denial of a reasonable religious accommodation and subsequent termination due to her decision to not receive the employer-mandated COVID-19 vaccine. (ECF No. 38-1; ECF No. 38-3). But MCS asserts that Plaintiff's Ohio state law claim against it is improper as the face of the EEOC charge against MCS alleges discrimination on the basis of her religion "in violation of Title VII of the Civil Rights Act of 1964[.]" (ECF No. 38-1). Similarly, CRC maintains that Plaintiff's OCRC charge was insufficient to put it on notice that Plaintiff intended to assert Title VII claims against it. (*Id.*). Hence, the question becomes whether Plaintiff has properly asserted her state law claim against MCS and her federal law claims against CRC.

Generally, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974). This rule serves a dual purpose: (1) making an employer aware of the conduct about which an employee complains; and (2) affording an employer an opportunity to settle the dispute through conference, conciliation, and persuasion. *See id.* at 415 U.S. at 44. Because "charges are frequently filed by lay complainants," a complainant need not "attach the correct legal conclusion," "conform to legal technicalities," or use "the exact wording which might be required in a judicial pleading." *Davis v. Sodhexo*, 157 F.3d 460, 463 (6th Cir. 1998). While this does not mean that

7

"plaintiffs are excused from filing charges on a particular discrimination claim before suing in federal court," instead, the Sixth Circuit directed courts to evaluate whether the non-alleged claim "grow[s] out of the investigation" or whether "the facts alleged in the charge … are sufficiently related to the claim such that those facts would prompt an investigation of the claim." *Jones v. Sumser Ret. Village*, 209 F.3d 851, 856 (6th Cir. 2000) (citing *Davis*, 157 F.3d at 464).

As to MCS, it is true that Plaintiff explicitly claimed to have been discriminated against "in violation of Title VII" and that the "particulars" section of her EEOC charge makes no reference to state law. (ECF No. 38-1). And as to CRC, it is true that the stock language in the OCRC's Notice of Right to Sue provides for an action "alleging a violation of Ohio Revised Code 4112." (ECF No. 38-4). But underlying any and all of Plaintiff's claims is that she sought a religious exception to the COVID-19 vaccine mandate, was denied, and was subsequently terminated. The summaries of these events provided in Plaintiff's EEOC and OCRC charges are identical. (ECF No. 38-1 at 1; ECF No. 38-3 at 2). Based on this alone, this Court finds that both her Title VII religious discrimination claims and her Ohio state law religious discrimination claim "grow[] out of" this same set of facts such that both are appropriate as to either Defendant. *Jones*, 209 F.3d at 856. The charges "giv[e] the employer[s] information concerning the conduct about which the employee complains" thereby providing an opportunity for voluntarily conciliation. *Younis v. Pinnacle Airlines*, 610 F.3d 359, 362 (6th Cir. 2010). While the EEOC enforces federal law and the OCRC enforces state law,[2] by nature of the deferral agency worksharing agreement, allegations of both state and federal law will be properly adjudicated.

---

[2] U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *About EEOC, Overview*, https://www.eeoc.gov/overview (last visited Mar. 27, 2024); OHIO CIVIL RIGHTS COMMISSION, *About Us, Anti Discrimination Laws*, https://civ.ohio.gov/about/anti-discrimination-laws (last visited Mar. 27, 2024).

Defendants' arguments boil down to something akin to form over substance. For example, CRC takes no issue with being "on notice" of a state law discrimination claim despite the fact that the document that put CRC on notice of that claim—the OCRC charge—did not actually allege a violation of the Ohio Revised Code, but instead alleged a Title VII violation. (*See* ECF No. 38-3 at 2). This Court would even go so far as to state that based on the OCRC charge alone, CRC was also "on notice" of Plaintiff's intent to also seek a remedy under Title VII. *See Szoke v. United Parcel Serv. of Am.*, 398 F. App'x 145, 154 (6th Cir. 2010) (requiring actual notice of an EEOC charge). But regardless, because Plaintiff's OCRC charge is considered filed with the EEOC, either remedy is appropriate. *See Knapfel*, 899 F.3d (evaluating a Title VII claim as a result of an OCRC charge).

Additionally, finding that Plaintiff has not asserted a state law claim against MCS in this set of circumstances would render the Sixth Circuit's decree against requiring the exact legal and technical jargon null and void. *See, e.g.*, *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002) (reemphasizing the "grow out of" test to allow a retaliation claim based on a discriminatory hiring claim); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir.1999) (holding that "retaliation naturally grows out of any underlying substantive discrimination charge, making a retaliation claim foreseeable to defendants"). The failure to cite to Ohio Revised Code § 4112.02 is a far cry from where litigants have been found to have not met this "growing out of" test, such as where the Sixth Circuit refused to infer a failure to accommodate a disability claim from an improper termination claim due to the differing factual circumstances involved with each claim, *see Jones*, 209 F.3d at 854, or where this Court determined that color and national origin discrimination claims do not necessarily arise out of a race discrimination claim, *see Carter v. Delaware Cnty. Bd. of Comm'rs*, No. 2:07-CV-1189, 2009 WL 544907, at *8 (S.D. Ohio Mar. 3,

9

2009). Nor does allowing both the state and federal claims to proceed result in the same logistical complexities of something like allowing a hostile work environment claim to proceed when a charge alleged only isolated acts, which faces insurmountable temporal hurdles based on what is required to plead those separate claims. *See Younis*, 610 F.3d at 362. Unlike these situations, where the listed and unlisted causes of action are premised on the same actions occurring at the same time and are merely different remedies for such actions, this Court will not bar the Plaintiff for some technical reason.

So, based on Plaintiff's reciprocal filings with the OCRC and EEOC and the facts at issue in her charges and pleadings, Plaintiff properly asserted claims for discrimination under both Ohio state law and Title VII as to both Defendants. As a result, Plaintiff's own allegations do not "show that a defense exists that legally defeats the claim for relief," and dismissal is inappropriate. *Lockhart*, 531 F. App'x at 547. Both Defendants' partial motions to dismiss are therefore **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, both Defendant CRC Technologies, Inc.'s Motion to Dismiss Counts I and II (ECF No. 38) and Defendant Mid-America Conversion Services, LLC's Partial Motion to Dismiss (ECF No. 39) are **DENIED**.

**IT IS SO ORDERED**.

ALGENON L. MARBLEY
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 29, 2024**